# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

————

No. 19-50360

————

United States Court of Appeals
Fifth Circuit

**FILED**
March 26, 2020

Lyle W. Cayce
Clerk

BRYCE MILLER; ROBERT MILLS; MICHAEL STRAWN;
JASON JEWERT; MICHAEL J. CANALES; BELINDA MANGUM,

Plaintiffs–Appellees,

versus

TRAVIS COUNTY, TEXAS;
JUDGE SARAH ECKHARDT, in her official capacity,

Defendants–Appellants.

————

Appeal from the United States District Court
for the Western District of Texas

————

Before SMITH, HO, and OLDHAM, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

The plaintiffs are lieutenants in the Travis County Sheriff's Office. A jury awarded each damages for unpaid overtime under the Fair Labor Standards Act ("FLSA"). It determined that the county hadn't shown (1) that the lieutenants' recommendations as to other employees were given "particular weight" or (2) that their primary duties were management. The county

No. 19-50360

challenges the judgment on various grounds. We affirm.

I.

The office's structure is straightforward. The Sheriff is naturally at the top of the food chain. In descending order are the Chief Deputy, majors, captains, lieutenants, sergeants, detectives, and deputies. The office is split into three bureaus; the plaintiffs serve in the law-enforcement bureau.

A.

The lieutenants' main responsibility is to manage the operation of units of sergeants and deputies. Patrol lieutenants oversee reports and calls for help. Sometimes they go to the field to assist with interviews, investigations, searches, and other front-line activities. But often, those duties are left to the sergeants and deputies, with the lieutenants overseeing and assigning tasks. The lieutenants spend plenty of time at their desks.

B.

The lieutenants participate in employment decisions regarding their co-workers, starting with hiring and promotion. The Sheriff's Office has a civil service system under which each applicant seeking to be hired or promoted is assigned a score based on two equally weighted components. One comes from a written exam, the other from an interview. The scores are then delivered to the Sheriff, who may pick from among the top three.

Lieutenants sometimes sit on the boards that conduct the interviews. Five reviewers participate in each one. On promotional boards, only those who outrank the candidate may sit; but on hiring boards, those lower in rank than the lieutenants can participate.

The board interviews the candidate, and the five reviewers submit their evaluations. The highest and lowest scores are tossed out, and the remaining

2

No. 19-50360

three are averaged. That interview score is then combined with the written portion to calculate a final score, which is delivered to the Sheriff.

The lieutenants also participate in discipline and termination decisions. When there is a potential disciplinary action against a deputy or sergeant, lieutenants must give recommendations within the chain of command. The lieutenants review the suggestions provided by their subordinates, conduct their own investigations, and then write a report. That report is delivered to the supervising captain, who reviews the file and arrives at his or her own recommendation. The major does the same. The Chief Deputy then makes a final decision, which is appealable to the Sheriff and even to the civil service system.

## C.

Believing they were entitled to overtime pay, the lieutenants sued Travis County and Judge Sarah Eckhardt under the FLSA, 29 U.S.C. § 201 *et seq.*, and 42 U.S.C. § 1983. The county answered, asserting, among other things, that the lieutenants were executive employees and hence exempt from the FLSA's overtime mandate.

The case went to a jury. The parties stipulated that the lieutenants had stated a claim under the FLSA, so the jury decided only whether the county had proven that the lieutenants were exempt. The jury found that they were not. The county hadn't shown (1) that the lieutenants' primary duty was management instead of front-line enforcement or (2) that the lieutenants' recommendations as to hiring, promotion, discipline, termination, and the like were given particular weight. The jury also found for the lieutenants on the § 1983 claim.

The jury awarded damages to each plaintiff for the FLSA and the § 1983 violations. After the verdict, the county renewed a motion for judgment as a

3

No. 19-50360

matter of law ("JMOL"), which the district court denied. The court entered judgment on the FLSA verdict alone, declining to award the lieutenants a double recovery for § 1983.

## II.

We review *de novo* a ruling on a motion for JMOL, *Evans v. Ford Motor Co.*, 484 F.3d 329, 334 (5th Cir. 2007), which may be granted if "a reasonable jury would not have a legally sufficient evidentiary basis to find for" a party that "has been fully heard on an issue," FED. R. CIV. P. 50(a)(1). Our review "is especially deferential" to a jury verdict. *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 235 (5th Cir. 2001). We affirm unless "the facts and inferences point[ed] so strongly in favor of the movant that a rational jury could not [have] reach[ed] a contrary verdict."[1] In doing so, we "review all of the evidence in the record." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). But we draw all reasonable inferences in favor of the nonmovant and do not evaluate credibility or weigh the evidence. *Evans*, 484 F.3d at 334.

## A.

The FLSA exempts from the overtime requirement "any employee employed in a bona fide executive . . . capacity." 29 U.S.C. § 213(a)(1). The employer bears the burden of proving that exemption by a preponderance of the evidence.[2]

A required element[3] of the exemption is that the employee be one "[w]ho

---

[1] *Allstate Ins. Co. v. Receivable Fin. Co.*, 501 F.3d 398, 405 (5th Cir. 2007). The lieutenants maintain that the county forfeited a sufficiency challenge as to Jewert, Canales, and Mangum, triggering an even more deferential standard of review. We needn't address that contention, because, under the normal standard, the evidence is sufficient. *See id.*

[2] *See Faludi v. U.S. Shale Sols., L.L.C.*, 950 F.3d 269, 273 (5th Cir. 2020); *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1224 (5th Cir. 1990).

[3] The test is conjunctive, as the parties agree. *See, e.g., Escribano v. Travis Cty.*,

No. 19-50360

has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight."[4]  The parties stipulated that the lieutenants couldn't hire or fire; so the jury decided only whether their recommendations received "particular weight."  29 C.F.R. § 541.100(a)(4).

The regulations illuminate what "particular weight" means.  *See id.* § 541.105.  Relevant factors include "[1] whether it is part of the employee's job duties to make such suggestions and recommendations; [2] the frequency with which such suggestions and recommendations are made or requested; and [3] the frequency with which the employee's suggestions and recommendations are relied upon."  *Id.*  Generally, the suggestions "must pertain to employees whom the executive customarily and regularly directs."  *Id.*  "[O]ccasional suggestion[s]" regarding a coworker don't count.  *Id.*  But the employee's suggestions can "still be deemed to have 'particular weight' even if a higher level manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decision."  *Id.*

B.

The county contends that the evidence was overwhelming that the lieutenants' recommendations are given particular weight—so much so that the

---

947 F.3d 265, 267 (5th Cir. 2020) (noting that the executive exemption *requires* the employer to demonstrate the four elements in 29 C.F.R. § 541.100(a)).

    [4] 29 C.F.R. § 541.100(a)(4).  Another requirement is that the lieutenants' "primary duty is management."  *Id.* § 541.100(a)(2).  The parties focus their briefs on that prong.  But we don't reach it, because the county needed to prove all four prongs, *see, e.g.*, *Escribano*, 947 F.3d at 267, and, for reasons described below, the jury permissibly concluded that the particular-weight prong wasn't met, *see Mullins v. City of New York*, 653 F.3d 104, 119 (2d Cir. 2011) (per curiam) (declining to reach one prong of the executive exemption because another prong wasn't met).

jury acted irrationally in concluding otherwise. We disagree. There was enough evidence for a rational juror to conclude that the county hadn't met its burden. *See Allstate*, 501 F.3d at 405.

To start, the hiring and promotional boards did not provide the lieutenants any special influence. They sometimes sat on the boards, but, at least for hiring boards, they did so along with their subordinates. Their scores were afforded the same weight as everyone else's. If a lieutenant's vote was an outlier, it didn't count. And even when it did count, it comprised only one-third of the interview score—which itself constituted only one-half of the total score. Thus, at most, a lieutenant's recommendation accounted for one-sixth of the final tally.

The county points out that a civil service system is designed to prevent any one participant's views from having disproportionate influence. "If working under civil service alone were a sufficient factor to negate the 'particular weight' element of the executive exemption," the county suggests, the "exemption would be without meaning."

But the jury was properly instructed that an employee's recommendation can receive particular weight even if he or she doesn't make the ultimate decision and even if others (including superiors) get to weigh in, too. And there is no evidence that the jury considered the civil service arrangement to be dispositive. Nor is there indication that the district court did.

The jury would've been justified in finding for the county on the particular-weight prong. But it chose not to, weighing the evidence differently from how the county would've preferred.[5] The jury heard, for example, that

---

[5] *See, e.g.*, *Olibas v. Barclay*, 838 F.3d 442, 450 (5th Cir. 2016) ("The jury's function as the traditional finder of facts is to weigh conflicting evidence and inferences and determine the credibility of witnesses." (cleaned up)).

internal recommendations played no role and that the lieutenants served on the boards voluntarily. There was enough for the jury to find as it did, and the exemption retains its "meaning."

The same is true for the lieutenants' role in discipline and termination. As the district court noted, the county provided few examples in which any lieutenant's recommendation—let alone that of the plaintiffs—was given particular weight, even though the regulation counts frequency of reliance as a factor and even though the county had the burden. *See* 29 C.F.R. § 541.105; *Dalheim*, 918 F.2d at 1224.

True, the lieutenants must provide their views in investigations of those under their command, and there was general testimony from two captains and a major that they give extra weight to the lieutenants' recommendations. One captain suggested that he frequently agrees with them.

But the jury also heard that sergeants—who are subordinate—provide the same kinds of recommendations, which the captains consider. And the jury wasn't required to believe the captains' testimony about the lieutenants' recommendations, because the jury could've viewed it as employer-pleasing and hence not credible[6]—especially given that the testimony wasn't supported with concrete examples. In fact, in the only example provided, it's unclear whether a plaintiff was involved (as opposed to another lieutenant), and the captain rejected half of the recommendation.[7]

There was evidence on both sides, and the jury picked a winner. Our task is not to determine whether the verdict was correct—only whether there

---

[6] *See id.* (noting that juries—not courts of appeals—weigh credibility).

[7] It is true that the regulation asks whether the lieutenants' recommendations were afforded particular weight—not whether they were followed. *See* 29 C.F.R. § 541.100(a)(4). Yet a rational jury could consider it *relevant* whether the recommendation was followed.

No. 19-50360

was a sufficient basis to render it. *See* FED. R. CIV. P. 50(a). There was.

## III.

The county contends that the district court erred in refusing to grant a new trial because the verdict ignored the weight of the evidence. We review for abuse of discretion and affirm unless "the party that was the movant in [the] district court makes a clear showing of an absolute absence of evidence to support the jury's verdict[.]" *Whitehead v. Food Max of Miss., Inc.*, 163 F.3d 265, 269 (5th Cir. 1998) (cleaned up). Above, under a more exacting standard, we found sufficient evidence.[8] So the refusal to grant a new trial was necessarily also blameless.[9]

The county maintains that the district court erred in refusing to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). The county urges that *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018), effected "a sea change in wage and hour law" in holding that courts should fairly—not narrowly—construe the FLSA's exemptions.

We review for abuse of discretion, *Def. Distributed v. United States Dep't of State*, 947 F.3d 870, 872 (5th Cir. 2020), and there was none. There is no evidence that the court or jury applied a narrow construction. The jury instructions said nothing about how to construe the exemption, and the district court was aware of *Encino*. There is therefore no "manifest error of law." *Id.* at 873.

Finally, the county urges us to grant JMOL as to the § 1983 claim. But

---

[8] *See Foradori v. Harris*, 523 F.3d 477, 497 (5th Cir. 2008) ("Our review of the district court's denial of a motion for a new trial is more deferential than our review of a motion for [JMOL].").

[9] *See id.* ("Because we have already concluded that the jury's verdict was supported . . . in reviewing the district court's denial of [JMOL], we necessarily find that there was no abuse of discretion in its denying the motion for a new trial[.]").

No. 19-50360

the court didn't enter judgment or award damages on that ground, recognizing that such would've created a double recovery.  That aspect of the case is therefore moot.[10]

AFFIRMED.

---

[10] *See, e.g.*, *Envtl. Conservation Org. v. City of Dall.*, 529 F.3d 519, 527 (5th Cir. 2008) (observing that a case is moot "when the parties lack a legally cognizable interest in the outcome of the litigation" (quotation marks removed)).